# SUPREME JUDICIAL COURT

#### FOR THE

## COUNTY OF SUFFOLK, NOVEMBER TERM 1855, AT BOSTON.

PRESENT:

Hon. LEMUEL SHAW, Chief Justice.
Hon. CHARLES A. DEWEY, ⎞
Hon. BENJAMIN F. THOMAS, ⎬ Justices.
Hon. PLINY MERRICK, ⎠

---

### John J. Driscoll *vs.* John C. Nichols & others.

A person who, at the request of a friend upon his death-bed, promises him, in case he dies, to send his body home to be buried with his mother; and, after his death, obtains a coffin from the city, and purchases a box in which to forward it, and puts the coffin with the body into the box and ships them on board a vessel; and pays to the owners of the vessel the price for which they have agreed with a sister of the deceased, since his death, to carry the body, if inclosed in such a box, to the desired place, of which agreement the sister has informed him; cannot maintain an action against the owners of the vessel for neglecting so to carry, without further proving a special contract with him to do so.

ACTION against the owners of the steamer Admiral for not transporting the corpse of Edward Seymour, with the coffin and outer box in which it was contained, from Boston to St. John, N. B., pursuant to an alleged contract with the plaintiff   The

declaration contained counts in contract and in tort, alleging them to be for the same cause of action, as allowed by *St.* 1852, .c. 312, § 2, *cl.* 5. It was alleged in the declaration, and not denied in the answer, that the plaintiff paid the defendants five dollars for the transportation of the corpse.

At the trial, the plaintiff introduced evidence of the following facts: The plaintiff was a friend of Seymour, and attended him during his last sickness at the house of Susannah Welch, the plaintiff's cousin; and, at his request, promised him, in case he should die, to send his body home to be buried with his mother in Fredericton, N. B.

John Sullivan testified that he, in behalf of the plaintiff, three days before Seymour's death, applied to the defendants' agent, and asked him if they would take a corpse to St. John, and how much they would charge, and told him that the man was not dead, but he did not know what minute he might die; and was answered that they would take the corpse for five dollars, and directed to have it put in a case.

Susan Seymour, a sister of the deceased, testified that she was with her brother during his last illness, and heard the plaintiff tell him that the captain of the steamboat was willing to take him for so much, upon having a case made for the purpose, and heard her brother thank the plaintiff.

The same witness and Susannah Welch testified that eight days after Seymour's death they went to the office of the defendants' agent, and asked him if he would take the body to St. John, and how much it would cost; and he said it would cost five dollars, and directed them to have it put in a wooden box, and brought on board early on the day of starting, before the crowd collected. And Susannah Welch testified that she reported this to the plaintiff.

There was also evidence that the plaintiff obtained a coffin from the city, and had a case made for it, and paid three dollars for the case, and took the body from the tomb, and placed it in the coffin, and paid the undertaker six dollars, and superintended the removal of the body from the tomb to the steamer, and, together with the deceased's sister and cousin, went to the

steamer with it, and was occupied about the matter several days. The body was received on board the steamer, but was put ashore before leaving Boston Harbor, and the money paid for its transportation refunded.

On this evidence, the defendants moved for a nonsuit, upon the ground that the plaintiff had not offered any evidence of a contract between him and the defendants, or of any facts which constituted a legal cause of action in his favor against them. *Bigelow*, J. took the case from the jury, and reserved it for the consideration of the whole court.

*H. M. Parker*, for the plaintiff.    This action will lie, although one of novel impression ; for the common law provides a remedy for every wrong, and readily adapts itself to new circumstances. 3 Bl. Com. 23.    1 Chit. Pl. (6th Amer. ed.) 96, 97.    *Ashby* v. *White*, 2 Ld. Raym. 957.    *Winsmore* v. *Greenbank*, Willes, 581. *Chapman* v. *Pickersgill*, 2 Wils. 145.    *Birkley* v. *Presgrave*, 1 East, 220.    *Yates* v. *Joyce*, 11 Johns. 140.

It is not necessary that the person complaining of such a wrong should be of kin to the deceased.    Actions at common law lie by the erector of a tombstone, or by one who hangs up trophies thereon, though after his death the action fall to the heir.    *Salem* v. *Harkness*, 4 N. H. 417, and cases cited.    1 Burn's Eccl. Law, (9th ed.) 272, 273.

The plaintiff may maintain this action, as owner of the box, which, upon the evidence, he owned, and the contents of which were lawfully in his custody ; and the property in which did not pass from him by the use to which it was devoted ; as shrouds, even after burial, remain the property of him who had them when the deceased was wrapped in them.    *Haynes's case*, 12 Co. 113.    He had a like ownership in the coffin, the furnishing of which as a charity by the city was a gift of it to the person to whom the duty of burial appertained ; and that duty in this case devolved upon the plaintiff.    Or, at least, it was a question of ownership to be submitted to the jury.

But the plaintiff may also maintain this action by reason of an ownership of the corpse itself, derived from the deceased, either under a *donatio causa mortis*, or an unwritten will.    A

man has a property in his own body, which may be the subject of a gift or bequest. 1 Ruth. Inst. *c.* 10, §§ 1, 8. Grotius, lib. 2, *c.* 17, § 2.

The plaintiff received the body of Edward Seymour as a *donatio causa mortis.* The transaction has all the characteristics of such a gift. It was a death-bed disposition, made in contemplation of death, subject, of course, to reversion if Seymour had lived. 2 Bl. Com. 514. The subject of the gift was sufficiently delivered; for it is enough if the means of physical dominion be delivered. *Ward* v. *Turner,* 2 Ves. Sen. 431. *Irons* v. *Smallpiece,* 2 B. & Ald. 551. *Gardner* v. *Parker,* 3 Madd. 184. *Duffield* v. *Elwes,* 1 Bligh N. S. 530. *Reddel* v. *Dobree,* 10 Sim. 244. *Snellgrove* v. *Baily,* 3 Atk. 214. And such dominion may be delivered to one person in trust for another, and may be coupled with a condition. *Blount* v. *Burrow,* 4 Bro. C. C. 72 *Hills* v. *Hills,* 8 M. & W. 401.

But if there is any difficulty in sustaining it as a *donatio causa mortis,* it may be sustained as a legacy under an unwritten will, *jure naturali.* On the law of nature rests the right of property which a man has in his own body; and the right of disposal still depends on the same law. By that law, a man had a right to dispose of all his possessions in a testamentary way, and, of course, without any writing or peculiar ceremonies. All the ceremonies or solemnities of wills are restrictions upon that right, and are to be construed strictly. By the common law, also, a will of chattels was good without writing. Godolphin, pt. 1, *c.* 2, § 3; *c.* 3, § 1. 1 Swinb. Wills, pt. 1, § 4. And so it remained until *St.* 29 Car. 2, *c.* 3, § 19, took the right away in cases where the estate exceeded £30. But there is no statute provision which touches the peculiar property of a human being in his own body. See *Sts.* 27 H. 8, *c.* 10; 29 Car. 2, *c.* 3, §§ 19, 23; Rev. Sts. *c.* 62, §§ 1, 6, 7.

If the plaintiff cannot be deemed to have taken a certain property in the body of his deceased friend as a legatee, he may well be regarded as executor of a will made under the law of nature; and having proceeded to discharge the manifest duty of an executor, of burying the deceased, and been prevented by the acts of the defendants, he may sustain the action.

At least, the plaintiff had, under the circumstances proved, a duty to discharge, devolved upon him by "the common principles of decency and humanity, the common impulses of our nature." *Lakin* v. *Ames*, 10 Cush. 221. *Jenkins* v. *Tucker*, 1 H. Bl. 91. *Rogers* v. *Price*, 3 Y. & J. 34. This perhaps does not differ greatly from what has been claimed above, *jure naturali.*

The payment of the freight by the plaintiff, taken in connection with the other circumstances of the case, is sufficient evidence of a contract between the defendants and the plaintiff.

*H. C. Hutchins*, for the defendants.

THOMAS, J. The plaintiff had no legal interest in this dead body, by reason of which he could maintain this action against a carrier without proof of a special contract with himself. And there was, in our opinion, no evidence in the case, which would have warranted a jury in finding such special contract.

There was no agreement, or even request, to carry the box without the body. The one is but the incident of the other, and cannot be severed from it. For taking it without the corpse, the defendants would have been clearly liable in trover.

*Plaintiff nonsuit*